IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 19, 2017

## CHARZELLE LAMONTEZ SWAFFORD v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Davidson County
No. 2012-A-291     Cheryl A. Blackburn, Judge

_____

### No. M2017-00082-CCA-R3-PC

_____

Petitioner, Charzelle Lamontez Swafford, was convicted of first degree murder, four counts of attempted first degree murder, and employing a firearm during the commission of a dangerous offense. His convictions and effective sentence of life plus fifty-six years were affirmed on direct appeal. *See State v. Charzelle Lamontez Swafford*, No. M2014-00421-CCA-R3-CD, 2015 WL 1543251, at *1 (Tenn. Crim. App. Apr. 2, 2015), *perm. app. denied* (Tenn. Aug. 12, 2015). Petitioner subsequently sought post-conviction relief on the basis of ineffective assistance of counsel. The post-conviction court denied relief after a hearing. On appeal, we determine that Petitioner failed to show that he was prejudiced by counsel's actions. Accordingly, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Charzelle Lamontez Swafford.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Glenn R. Funk, District Attorney General; and Megan King, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

After being convicted of first degree murder, four counts of attempted first degree murder, and employing a firearm during the commission of a dangerous felony during a "shooting spree" at a Nashville apartment, Petitioner received an effective sentence of

life in prison plus fifty-six years at 100%, to be served in incarceration. *Charzelle Lamontez Swafford*, 2015 WL 1543251, at *1. On direct appeal, this Court affirmed Petitioner's convictions. *Id.*

The Petitioner filed a pro se petition for post-conviction relief in which he alleged various ways in which he received ineffective assistance of counsel. He included complaints about trial counsel's failure to raise diminished capacity as a defense, failure to request psychological testing, and failure to challenge a sleeping juror. Counsel was appointed for purposes of post-conviction relief and an amended petition was filed. In the amended petition, Petitioner argued that trial counsel failed to effectively cross-examine the State's witnesses, failed to adequately communicate with him, failed to investigate his case, and failed to raise a "diminished capacity" defense. Petitioner also insisted that one of the jurors fell asleep during trial and that he notified trial counsel, who failed to notify the trial court which led to a "tainted verdict." At the hearing on the petition, post-conviction counsel orally amended the petition to include an issue related to trial counsel's failure to appeal the trial court's denial of a motion to suppress cell phone data which was used at trial to help prove Petitioner's location at the time of the crimes. The parties agreed to the amendment of the petition.

At the hearing on the petition for post-conviction relief, Petitioner testified that he spoke with trial counsel "a good amount of time" during his incarceration prior to trial. Trial counsel even enlisted the help of another attorney. They both met with Petitioner at the jail and went over the discovery documents prior to trial. Petitioner admitted that numerous motions were filed pretrial, including a motion to suppress cell phone records.

Petitioner explained that he suffered from "ADHD and some other stuff." He recalled an "evaluation" prior to trial but did not recall who performed the evaluation or the purpose of the evaluation. Petitioner knew that he had completed a mental health evaluation sometime in the past at "Dede Wallace and Centerstone" where he learned he had "ADHD and something else." Petitioner was unable to put a label on the exact source of his problems but explained that his mental problems affected his ability to understand things "a little bit." Petitioner recalled that trial counsel "got [his] alibi in court," meaning trial counsel utilized an alibi defense during trial. Petitioner explained that the defense strategy was unsuccessful. Petitioner read the opinion issued by this Court on direct appeal but did not "get" some of it because it was difficult for him to understand.

Petitioner insisted that a juror fell asleep during the trial. Petitioner described the juror as a white male that was "sitting either [in] the third seat or the fourth seat in the front." He told trial counsel about the juror but trial counsel did not address the issue with the trial court. Petitioner testified that he relied on all of the allegations made in his petition for relief, not just the ones he remembered to talk about at the hearing.

Trial counsel testified that he had been licensed to practice law in Tennessee since 2008 and, at the time of the hearing, had worked in the public defender's officer for seven years. Trial counsel was appointed to represent Petitioner after someone in the public defender's office retired but recalled being involved "essentially from the very beginning, maybe initially as the second chair." Trial counsel "really liked" Petitioner, describing him as a "loving, funny guy." Trial counsel met with Petitioner "a lot" because he was Trial counsel's "most serious case at the time." They discussed discovery, possible defenses, and Petitioner's needs during their meetings which were sometimes brief.

Trial counsel made the decision to have an evaluation performed on Petitioner "out of caution" but ultimately decided that it was not "going to be a fruitful avenue to follow especially given the report." Trial counsel could not exactly recall Petitioner's diagnosis but thought that "PTSD and ADHD" were the primary issues Petitioner faced. Trial counsel informed the post-conviction court that Petitioner had a "very rough life."

Petitioner "was pushing" trial counsel to use an alibi defense. Trial counsel agreed with Petitioner at the time but admitted in "hindsight" that he "may not have done that" in light of testimony introduced at trial by the State, including a 911 call that named Petitioner as a suspect. Additionally, Petitioner's mother, the main alibi witness, was not a "natural speaker." In fact, trial counsel remembered rebuttal testimony entered by the State that tended to prove Petitioner's mother admitted to an officer that Petitioner was not actually with her at the time of the incident. Trial counsel also admitted that he should have "pushed harder" to emphasize the power that the gang leader had over Petitioner as he felt that it was a "more fruitful" defense than the alibi defense.

Trial counsel filed several pretrial motions including a motion to suppress cell phone records. The motion sought to prohibit the State from using "actual pings on cell phone towers around the city that they could use to somewhat triangulate somebody's position." The motion was denied in a lengthy order from the trial court, who determined that a search warrant was not required to obtain historical cell site data from a third party provider and the State complied with the requirements of the applicable statute by obtaining a court order for the telecommunications records. Trial counsel admitted that he made an "actual mistake" by failing to "include [this issue] in the motion for new trial."

When asked about a sleeping juror, Trial counsel testified he "think[s] maybe there was one guy that [he] felt like was listening, but he would listen with . . . his head down." Trial counsel "kept watching him and felt like he was actually awake." Trial counsel admitted that he did not "remember much on that" issue or a "specific person." Trial counsel explained that if a juror fell asleep, the remedy would most likely be for that juror to become an alternate.

In a written order, the post-conviction court denied relief. Specifically, the post-conviction court determined that Petitioner's evidentiary hearing testimony did not support the allegation that trial counsel failed to adequately prepare for trial. In fact, the post-conviction court concluded that the testimony indicated that Petitioner and trial counsel met multiple times to prepare the case for trial, discussing strategy and reviewing discovery. The post-conviction court determined "based on Petitioner's testimony alone" that Petitioner failed to demonstrate a deficiency with regard to trial counsel's investigation and communication. The post-conviction court accredited trial counsel's testimony and determined that the proof before the post-conviction court "contradict[ed] Petitioner's] allegation[s]."

The post-conviction court likewise determined Petitioner failed to establish that trial counsel was ineffective for failing to consider Petitioner's mental health or seek an evaluation. The post-conviction court again accredited the testimony of trial counsel and determined Petitioner "presented no proof to demonstrate otherwise."

The post-conviction court noted that Petitioner's "primary complaint" at the hearing was with regard to the sleeping juror. The post-conviction court determined that Petitioner failed to establish through clear and convincing evidence that the incident even occurred. The only proof at the hearing was the "uncorroborated testimony of the Petitioner." The post-conviction court reviewed the court's notes from trial and found that a black female juror was actually sitting in the seat alleged to have been occupied by the white male juror who Petitioner insisted was sleeping. The white male juror who was seated in the "third seat" was ultimately "slated as an alternate juror" and did not deliberate or assist in rendering the verdict.

Finally, the post-conviction court addressed Petitioner's oral amendment to the petition. At the hearing, the post-conviction court allowed Petitioner to amend the petition to include an allegation that trial counsel was ineffective for failing to include the motion to suppress the cell phone data in the motion for new trial. The State did not object to the oral amendment. Even though trial counsel admitted that he should have included this issue on appeal and its omission was a "mistake," the post-conviction court determined that Petitioner failed to establish that he was prejudiced by trial counsel's failure.

Petitioner appeals from the denial of post-conviction relief.

*Analysis*

*A. Standard of Review*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). On appeal, this Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

## B. Ineffective Assistance of Counsel

On appeal, Petitioner contends that the post-conviction court improperly determined that trial counsel rendered effective representation at trial. Specifically, Petitioner points to trial counsel's failure to include the suppression issue in the motion for new trial and trial counsel's failure to notify the trial court that there was a sleeping juror. The State argues that Petitioner has failed to satisfy his burden and that any other issues raised in the petition are now abandoned on appeal.

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994), even if a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

Petitioner alleged in the petition and on appeal that a juror fell asleep during trial and trial counsel failed to notify the trial court of this fact. Petitioner was unable to definitively identify the juror but thought that he was a younger white male seated in the third or fourth seat on the front row. Trial counsel did not recall a juror sleeping during Petitioner's trial. Trial counsel actually thought he recalled a juror who appeared to be listening with his head down but was awake during trial. Trial counsel admitted that he may have had a conversation with Petitioner about the sleeping juror but testified that if he had noticed a sleeping juror, he would have brought it to the attention of the trial court.

The post-conviction court accredited the testimony of trial counsel and noted that Petitioner's testimony was uncorroborated. In fact, the post-conviction court reviewed records from Petitioner's trial and determined that a female juror was seated in the fourth seat and a male juror was seated in the third seat. The male juror ultimately became an alternate and did not deliberate with the jury. The post-conviction court determined that Petitioner failed to prove deficient performance or prejudice of trial counsel with regard to the juror. The evidence does not preponderate against the determination of the post-conviction court. Petitioner's only proof with regard to the allegedly sleeping juror was

- 6 -

his own testimony, which the post-conviction court discredited. The post-conviction court assessed his credibility—a task within its purview—and determined Petitioner's testimony was not credible. We will not review this determination on appeal. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). Petitioner is not entitled to relief on this issue.

Additionally, the record does not preponderate against the post-conviction court's determination that Petitioner failed to prove ineffective assistance of counsel for trial counsel's failure to challenge the trial court's ruling on the motion to suppress cell phone data in a motion for new trial. Trial counsel admitted at the hearing that his failure to include the issue in the motion for new trial was a "mistake." The post-conviction court determined that Petitioner failed to show he was prejudiced by the omission of the issue. We agree. Petitioner merely argues that the evidence from cell phone "pings" was "crucial in placing [him] at or near the scene of the crime" but fails to show how or why he would have prevailed on appeal had this issue been included in the motion for new trial. Petitioner failed to prove prejudice on this claim. The post-conviction court extensively analyzed this issue, discussing the original order denying the motion to suppress the cell phone data and concluding that there was still no authority that would result in the exclusion of the evidence. In other words, the post-conviction court concluded that even if trial counsel had included the issue in a motion for new trial, Petitioner would not have been successful on appeal. Petitioner has presented no authority in this Court that would show otherwise. Petitioner is not entitled to relief on this issue.

We also note that, from our review of the record and the briefs, it appears that Petitioner does not raise on appeal all issues that were identified in his petition and amended petition. Any issues that were raised in the post-conviction court but that have not been pursued on appeal are deemed abandoned. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("While the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal."), *perm. app. denied* (Tenn. Apr. 16, 2010).

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE